UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ALFRED JERMAINE WILSON SR #511615     CIVIL ACTION NO. 23-cv-569 SEC P

VERSUS     JUDGE S. MAURICE HICKS, JR.

TRAVIS OGDEN     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Alfred Jermaine Wilson, Sr. ("Plaintiff") is a self-represented inmate who filed this civil rights action against Red River Parish Sheriff's Deputy Travis Ogden based on an allegation of excessive force. Before the court is Deputy Ogden's Motion for Summary Judgment (Doc. 43). The motion was noticed for briefing, but Plaintiff did not file any response. For the reasons that follow, it is recommended that the motion be granted.

### Plaintiff's Allegations

Plaintiff alleged that he called the sheriff's office to report an assault. The first officer to arrive at his residence was Deputy Travis Ogden, who immediately pointed his firearm at Plaintiff and ordered him to get on his knees with his hands on his head, then lie flat on his stomach. Plaintiff stated that he "complied with all instructions."

Deputy Ogden then allegedly approached Plaintiff, grabbed his left hand, and placed handcuffs on. Then, for no reason, Deputy Ogden yelled "stop resisting" and drove his left knee into Plaintiff's trapezius and neck and placed the other handcuff on. Ogden then

allegedly took his hand, interlocked his fingers into Plaintiff's right hand, and started to twist Plaintiff's wrist.

Plaintiff alleged that the twisting caused a loud pop, and his "pinky finger was twisted along my spine in an upward motion." Plaintiff alleged that a second officer, Deputy Guin, was at the scene speaking with Plaintiff's brother and said, "I have the incident on video and can show you." After Guin viewed the footage, he allegedly told Ogden to release Plaintiff. Plaintiff alleged that Ogden intentionally twisted his wrist, which has caused continuing medical issues.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Deputy Ogden's Summary Judgment Evidence**

Deputy Ogden's motion is supported by his detailed declaration in compliance with 28 U.S.C. § 1746, as well as audio and video footage from his body camera that recorded the entire incident and that is referenced throughout Ogden's declaration. Deputy Ogden stated that he responded to a 911 call from Rolling Hills Trailer Park in Coushatta. The sheriff's dispatch advised him that a complainant named Krystal Bamburg reported that Plaintiff attacked her husband, Teddy Bamburg, with a machete, and Teddy was severely bleeding.

Deputy Ogden was the first deputy to arrive at the scene. He first encountered Krystal and Teddy, who was bleeding from his forehead and left arm. They told Ogden that Plaintiff attacked them near some dumpsters while they were minding their own business. Plaintiff's brother soon drove up to the scene, and Teddy told Deputy Ogden that Plaintiff claimed he would get his brother to come out and kill Teddy. The brother got out of his vehicle and approached Ogden. The brother appeared to be upset and angry, so Deputy Ogden directed him to move away, and the brother complied.

Deputy Ogden waited for an additional deputy to arrive before going to Plaintiff's nearby residence. He and Deputy Guin then drove the short distance to Plaintiff's house. Ogden explained in his declaration that, at the time, the information he had been provided indicated that Plaintiff was armed with a machete and had just committed a serious violent crime by attacking Teddy without provocation. Ogden needed to detain Plaintiff, frisk him for weapons, and question him.

Upon arriving at Plaintiff's residence, Deputy Ogden stood behind the open door of his vehicle, with his pistol drawn and pointed at the ground in front of Plaintiff, and ordered Plaintiff to raise his hands, face away from the deputy, and walk backwards toward him. Plaintiff did not immediately comply and continually complained that he was the person who called the police. After several commands, Plaintiff finally complied, and Deputy Ogden told him to kneel down, which Plaintiff finally did after two or three commands.

Deputy Guin approached Plaintiff to handcuff him, and Deputy Ogden approached immediately behind Guin. Deputy Guin placed a handcuff on Plaintiff's right wrist. Deputy Ogden assisted in getting Plaintiff's left wrist into a handcuff by briefly holding Plaintiff's left shoulder and arm while Guin placed the left wrist in the other handcuff.

Deputy Ogden stated that he then guided Plaintiff to his feet and conducted a pat down. Plaintiff constantly complained and questioned the process, shouting, "Hold up," several times. Deputy Ogden directed Plaintiff to the back seat of his patrol vehicle, and Plaintiff entered the backseat himself.

The deputies then investigated the area. They examined multiple items of damaged property, broken windows in a car, and ample blood splatter. Deputy Ogden spoke again with Krystal and another female who was with her. He also spoke again with Teddy while EMS treated Teddy.

After about 15 minutes of investigation, Deputy Ogden returned to the vehicle where Plaintiff was handcuffed, administered <u>Miranda</u> warnings, and questioned Plaintiff. He asked Plaintiff for his side of the story, and he did not touch Plaintiff during that interaction.

The deputies retrieved the machete where Plaintiff told them they could find it, and they conducted about ten more minutes of scene investigation. Deputy Ogden then returned to his vehicle and continued to question Plaintiff, without touching him during the interaction.

Plaintiff eventually stated that he had cameras on his trailer that recorded part of the interaction between him and Teddy Bamburg. Deputy Ogden allowed Plaintiff to get out of the car, still in handcuffs, and go into his trailer so that he could show the deputies the video. Ogden did not touch Plaintiff during this interaction. After they were inside the house, Deputy Ogden removed Plaintiff's handcuffs so that Plaintiff could try to pull up the footage from his security cameras. Plaintiff was never handcuffed again during the incident.

Deputy Ogden stated in his declaration that Teddy and Krystal Bamburg were later arrested for criminal trespass and criminal damage to property for their conduct that evening. Ogden stated under penalty of perjury that he did not use excessive force in detaining Plaintiff, did not drive his knee into Plaintiff's trapezius or neck at any time, and did not twist Plaintiff's wrist at any time during the incident. He specifically denied employing any "wrist lock" or hearing any "loud pop" of Plaintiff's wrist. Ogden added that Plaintiff "did not appear injured" after the interaction and "did not complain of any pain" or request medical attention during the incident.

**Analysis**

When a person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are

"objectively reasonable" in light of the facts and circumstances. Graham v. Connor, 109 S.Ct. 1865 (1989). To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

Deputy Ogden's declaration is fully supported by his body camera audio and video recordings. They show that Deputy Ogden acted reasonably and professionally throughout the incident, gathering information from both sides, and conducting a thorough investigation of the scene. The only time he even slightly raised his voice was after Plaintiff refused to comply with multiple commands and was shouting objections.

The body camera evidence shows the initial application of the handcuffs and their later removal. Both events are entirely consistent with Deputy Ogden's description. There is no hint of the kneeing, hand-twisting or other behavior alleged in Plaintiff's complaint. Notably, there was no oral or physical indication from Plaintiff that he experienced any pain or discomfort associated with the handcuffs. Plaintiff was quick to complain about every aspect of the incident, but he never mentioned the handcuffs.

Plaintiff's complaint was accompanied by video recorded by his brother with a cell phone, and that video also supports Deputy Ogden's description of the events. There is zero evidence in any of the video to indicate that Deputy Ogden employed excessive force or otherwise violated Plaintiff's Fourth Amendment rights in connection with the application of the handcuffs or any other physical interactions during the incident.

Plaintiff repeatedly alleges in his multiple amended complaints that he has suffered ongoing problems with his wrist that have required medical attention. That may be, but there is no evidence that Deputy Ogden did anything during this incident that would have caused such an injury. Nothing in his conduct came close to being a constitutional violation under the <u>Graham</u> standard. Deputy Ogden is entitled to summary judgment dismissing all claims asserted in the complaint.

Accordingly,

It is recommended that Deputy Ogden's Motion for Summary Judgment (Doc. 43) be granted and that this civil action be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of August, 2024.

_____
Mark L. Hornsby
U.S. Magistrate Judge